Daniel K. Brough (10283)
Eric B. Vogeler (12707)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, UT 84121
Telephone:  (801) 438-2000
Facsimile:   (801) 438-2050
Email: dbrough@btjd.com, evogeler@btjd.com

*Attorneys for Defendant Direct Mortgage, Corp.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * *

|  |  |  |
|---|---|---|
| JASON LUNT, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANT DIRECT** |
| | ) | **MORTGAGE, CORP.'S MOTION** |
| | ) | **TO DISMISS AND MEMORANDUM** |
| v. | ) | **IN SUPPORT** |
| | ) | |
| DIRECT MORTGAGE CORPORATION; | ) | |
| NATIONSTAR MORTGAGE; JAMES H. | ) | Civil No. 1:13-cv-00065 DB |
| WOODAL, Trustee, and DOES 1–10, | ) | |
| | ) | Judge Dee Benson |
| Defendants. | ) | |
| | ) | |
| | ) | |

* * * * * * *

## MOTION

Defendant Direct Mortgage, Corp. ("Direct Mortgage"), by and through its counsel of

record, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR 7-1,

moves the Court to dismiss Plaintiff Jason Lunt's ("Lunt") Amended Complaint (Doc. No.10).

The grounds for this motion are more fully set forth in Direct Mortgage's Memorandum in

Support of Motion to Dismiss.

In brief, the Court should dismiss all of Lunt's claims with prejudice because each of

them is barred by the Truth in Lending Act's ("TILA") one-year statute of limitations or its three-year statute of repose, depending on the type of TILA claim, both found in 15 U.S.C. § 1640(e).  The acts of which Lunt complains all occurred no later than late September 2007.  Lunt did not assert his claims against Direct Mortgage until April 30, 2013, the date of the Amended Complaint.  Equitable tolling does not salvage Lunt's claims.  Therefore, the Court should dismiss all of Lunt's claims with prejudice.

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

### INTRODUCTION

Lunt attempts to assert fifteen causes of action against Direct Mortgage.  *See* Doc. No. 10, Am. Compl. filed June 13, 2013, ¶¶ 51–114, 145–149 (on file with the Court).  For ease of reference, those causes of action can each be divided into three distinct categories: those alleging various violations of TILA (the "TILA Claims), which are Lunt's First through Thirteenth Causes of Action; a claim for quiet title, which is Lunt's Fourteenth Cause of Action; and a claim for "injunctive relief," which is Lunt's Eighteenth Cause of Action.[1]  Each of those claims against Direct Mortgage arises from a single act: Direct Mortgage's documentation and funding of a home equity line of credit for Lunt and his wife, which, based on Lunt's own allegations, occurred no later than late September 2007.[2]  Each of those claims fails for a single reason: Lunt had no more than one year (or three years, depending on the type of TILA claim) from September 30, 2007—at the latest—to assert his TILA Claims.  But Lunt first asserted his claims

---

[1] Despite the Amended Complaint's numbering of its causes of action, it does not contain a Fifteenth or Sixteenth Cause of Action.

[2] Although not necessarily relevant to Direct Mortgage's Rule 12(b)(6) motion, Direct Mortgage actually funded the loan, after documenting it, on August 15, 2007.  Regardless, Lunt's Amended Complaint provides more than enough

against Direct Mortgage *well over five years* after that date.  And equitable tolling does not save Lunt's claims—particularly his request for rescission, which is subject to a statute of repose and therefore cannot be equitably tolled.

TILA's statutes of limitations bars each of Lunt's TILA Claims against Direct Mortgage. The Court should therefore dismiss each of those claims with prejudice.  Furthermore, the Court should dismiss Lunt's claim for quiet title against Direct Mortgage with prejudice, as that claim's success turns on the success of the TILA Claims, which fail.  Finally, the Court should dismiss Lunt's request for injunctive relief, as that is not a claim for relief, and Lunt alleges no claim that can form a basis for injunctive relief.

STATEMENT OF FACTS

The following statements of fact are derived wholly from Lunt's Amended Complaint:

1.    Lunt and his wife Nicole (collectively, the "Lunts") reside at 112 Oakwood Drive, Layton, Utah.  *See* Am. Compl. ¶ 1.

2.    In the spring or summer of 2007, the Lunts met with a family friend, Gordon O'Neill ("O'Neill") to discuss "a great new HELOC program."  *Id.* ¶¶ 6–7.

3.    The Lunts met with O'Neill in early August 2007 to review loan documents that O'Neill had prepared.  *Id.* ¶ 8.

4.    Many of the documents were already filled out and some were blank, but at O'Neill's urging, the Lunts signed approximately half of the documents "to get the process going."  *Id.* ¶ 9.

5.    The Lunts believed that the HELOC product (the "Loan") they would be

_____

factual material for the Court to grant Direct Mortgage's motion.

receiving was for a 30-year mortgage and that their monthly mortgage payment would only increase by approximately $200.00 per month—to $1,500 per month.  *Id.* ¶¶ 11–12.

6.      The Lunts expressed displeasure at O'Neill's proposed fees and penalties, however, and moreover "did not feel good about the loan" and "ultimately told O'Neill that they were not interested in the loan."  The Lunts invited O'Neill to instead "get them revised documents and disclosures, and they would discuss the process further."  *Id.* ¶¶ 13–16.

7.      "Within a week," O'Neill called the Lunts and informed them that he had a check for $50,000 for them that he wanted to deliver.  *Id.* ¶ 17.

8.      Lunt told O'Neill that he had not signed closing documents and asked how the loan could have closed without his consent or participation or his appearance at the title company.  *Id.* ¶ 18.

9.      Notwithstanding those concerns, Lunt subsequently accepted the check from O'Neill, who told Lunt that "Platinum Mortgage had found a lender who was willing to make the loan (Direct Mortgage Corp.)."  *Id.* ¶ 19.

10.     "Within a couple of weeks, Lunt received a statement from Direct Mortgage informing them [*sic*] that their [*sic*] first payment was due in the amount of $1,500.00, and that Direct Mortgage did not service loans, but would be selling the loan before October to another company."  *Id.* ¶ 25.

11.     "By late September [2007], Aurora Loan Servicing, L.L.C [("Aurora)}. . . . sent Lunt a letter disclosing that Aurora would be the new servicing company for the Loan, and that a coupon book for payments would shortly follow."  *Id.* ¶ 26.

12.     By the second week of October 2007, Lunt received a coupon book from Aurora

indicating that the Loan was a "negative amortization loan" and that the Lunts could choose between four options, the cheapest of which would increase their monthly mortgage by $800.00. *Id.* ¶ 27.

13.     Lunt contacted O'Neill who encouraged Lunt to keep "mak[ing] the minimum payment." *Id.* ¶ 28.

14.     The Lunts did so for another few months, but they soon became "very nervous" because O'Neill "kept telling them to just continue making the minimum payment, and he would work things out, but nothing was resolved." *Id*. ¶ 29.

15.     After "a couple of months" more passed, Lunt contacted his financial consultant, who suggested that the Lunts obtain a "full copy of their loan paperwork from their title company." *Id.* ¶ 30.

16.     Lunt, who by now had "realiz[ed] that something had gone very wrong," "immediately" contacted Mercury Title Company ("Mercury") to receive a copy of their files. *Id.* ¶ 31.

17.     Upon review of that file, the Lunts realized that the paperwork they had received from O'Neill and the Loan documents they had received from Mercury were inconsistent, that Mercury's documents included forged signatures and executions, and that they had been issued an adjustable-rate mortgage with a pre-payment penalty of $10,000.  *Id*. ¶¶ 32–34, 36.

18.     Lunt filed his initial complaint on April 30, 2013.  *See* Doc. No. 1, Compl. filed Apr. 30, 2013.

19.     Before responsive pleadings were filed, Lunt filed an Amended Complaint on June 13, 2013.  *See generally* Am. Compl.

**ARGUMENT**

Pursuant to Rule 12(b)(6), courts accept the facts presented in a plaintiff's complaint "as true and constru[e] them in the light most favorable to the plaintiff." *See Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.,* 104 F.3d 1215, 1224 (10th Cir. 1997)).  However, a plaintiff must provide "more than labels and conclusions" or some "formulaic recitation of the elements of a cause of action."  *See Bell Atlantic Corp v.* Twombly, 550 U.S. 544, 555 (2007).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  Based on the facts set forth in Lunt's Amended Complaint and the strict time bars imposed by TILA, discussed in more detail below, no plausible, nonspecultaive interpretation of the facts affords Lunt the kind of relief his claims against Direct Mortgage demand.  The Court should therefore dismiss all of Lunt's claims against Direct Mortgage with prejudice.

**I.   PLAINTIFF'S TILA CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.**

TILA imposes a one-year statute of limitations on most TILA-related causes of action. With some exceptions, "any action under this section may be brought . . . within one year from *the date of the occurrence of the violation*."  *See* 15 U.S.C. § 1640(e).  The aforementioned exceptions pertain to 15 U.S.C. sections 1639, 1639b, and 1639c; claims under those sections "may be brought . . . before the end of the 3-year period *beginning on the date of the occurrence of the violation*."  *See id.* (emphasis added).  Therefore, a TILA violation "occurs at a specific time from which the statute will then run." *See Stevens v. Rock Springs Nat'l Bank,* 497 F.2d 307, 309 (10th Cir. 1974).  That "specific time," in every instance, is the "time the consumer credit

transaction was consummated." *See Estrada v. Aurora Loan Servs., LLC*, No. 2:10-cv-1009, 2010 U.S. Dist. LEXIS 124865, *6 (D. Utah Nov. 23, 2010) (unpublished disposition).

Here, Lunt's alleged violations of TILA, insofar as they pertain to Direct Mortgage, all arise from Direct Mortgage's closing and documentation of the Loan. *See* Am. Compl. ¶¶ 52, 56–57, 61–62, 66, 70–71, 75, 80, 83, 87, 91, 95, 99, 103–4, 108–10. Based on Lunt's allegations, Direct Mortgage had sold the Loan to Aurora no later than late September 2007. *See id.* ¶ 26. Therefore, Lunt had either one year or three years from that date—say, September 30, 2007, to give Lunt the benefit of the doubt—to assert his TILA claims. He did not assert those claims until April 30, 2013. His TILA claims are therefore barred by the statute of limitations unless Lunt can show that equitable tolling should apply. *See Heil v. Wells Fargo Bank, N.A.*, 298 F. App'x 703, 706 (10th Cir. 2008) (noting that a suit brought more than a year after the occurrence of the TILA violation is time-barred "unless the statute of limitations has been equitably tolled").

On the face of Lunt's Amended Complaint, Lunt cannot establish equitable tolling. Equitable tolling "is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Id.* at 706; *see Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir.1986) (requiring a plaintiff asserting equitable tolling to "show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct"). "[E]quitable tolling . . . is only available when [litigants] diligently pursue [their] claims and demonstrate[ ] that the failure to timely file was caused by extraordinary circumstances beyond [their] control." *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000). Other courts have stated that, in the

7

context of TILA, the one-year statute of limitations may be equitably tolled only if "a plaintiff is unable to obtain vital information bearing on the existence of his claim." *See, e.g.*, *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). That said, though, the inquiry does not focus on a defendant's acts but rather on whether plaintiff's delay in filing is excused or excusable due to circumstances outside his control. *Id.*

With that analysis in mind, equitable tolling is rarely employed and even more rarely successful. It is "an extraordinary remedy employed . . . in rare and exceptional circumstances." *See Gunderson v. Abbott*, 172 Fed.Appx. 806, (10th Cir. 2006). Because equitable tolling requires a plaintiff "to show (1) that they were diligently pursuing their rights, but (2) some extraordinary circumstances prevented them from timely filing their claim," *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), "[s]imple excusable neglect is not sufficient," *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). As the following sections demonstrate, on the face of Lunt's Amended Complaint, these facts not only do not exist, but *cannot* exist consistent with Lunt's own allegations.

A.     **Lunt Does Not Qualify for Equitable Tolling Because on the Face of His Amended Complaint, He Did Not Diligently Pursue His Rights.**

At the outset, on the face of his Amended Complaint, Lunt cannot establish that he diligently pursued his rights. Lunt himself alleges, for instance, that within a week of O'Neill's first visit to the Lunts, in early August 2007, he handed them a check for $50,000.00 even though Lunt had not signed any closing documents. *See* Am. Compl. ¶¶ 7, 17–19. Critically, although Lunt admits he hadn't signed any closing documents, he ostensibly kept the $50,000.00 check. *See id.* ¶ 19. As of that date, Lunt either was, or should have been, aware that he had just received the Loan, to which he did not agree. Receiving—and keeping—loan proceeds for a

loan that one never agreed to is a sure-fire way to conclude that something went awry in the documentation process, including that forgery may have occurred.

Moreover, within a couple of weeks after that, Lunt "received a statement from Direct Mortgage informing them that their first payment was due in the amount of $1,500.00." *See id.* ¶ 25. Surely by *that* date Lunt knew he had received the Loan, and that he had not agreed to its terms.

By the second week of October, Lunt knew that Aurora—to whom Direct Mortgage had sold the Loan—intended to charge him a minimum of $1,561.61 per month, not $1,500.00 per month, and that the loan was a negative amortization loan, which Lunt apparently did not want. *See* Am. Compl. ¶¶ 27, 34.

Finally, within "[a] couple of months"—arguably by January 1, 2008, at the latest—Lunt contacted Mercury, realizing that "something had gone very wrong" with the Loan. *See id.* ¶ 31. He then learned "that the loan they had been issued was an adjustable rate mortgage (ARM) that was a pick-a-pay loan, or negative amortization loan, and worst of all, there was a pre-payment penalty of $10,000.00." *See id.* ¶ 34. Of course, Lunt knew that the Loan was a "pick-a-pay" loan by the second week of October 2007, when Aurora told him so. *See id.* ¶ 27.

The Lunts expressed doubts and anxiety about the Loan all through this process, to O'Neill, their financial consultant, Mercury, and Aurora. *See id.* ¶¶ 18, 28, 30–31, 35. They cannot plausibly allege that they did not know their Loan was problematic.

Therefore, Lunt was aware from nearly the beginning—surely no later than late September, 2007, that something was amiss with the Loan. *He accepted a $50,000.00 check for a loan he admits he had not agreed to.* And although Aurora and Nationstar Mortgage had

"informed Lunt that they were investigating his allegations of forgery and forged documents," and allegedly "delayed Lunt in good faith," *see id.* ¶ 111, Lunt does not even allege that Direct Mortgage delayed him in that way.  Lunt cannot establish that he has diligently pursued his rights when he has been aware, since late September 2007, but at the latest early 2008, that the Loan was the product of alleged TILA violations.  He still waited over five years to bring his claims.

      **B.**      **Lunt Does Not Qualify for Equitable Tolling Because He Cannot Demonstrate that Extraordinary Circumstances Prevented Him from Timely Asserting His Claims.**

With respect to extraordinary circumstances outside his control that prevented him from otherwise timely filing his TILA Claims, all of the facts upon which Lunt relies now were known to him and his wife nearly six years ago.  And he has not alleged or indicated that any new facts have or will come to light in the intervening years that would finally shed the requisite light onto claims that Plaintiff could not have otherwise brought.  Again, although Aurora and Nationstar Mortgage had "informed Lunt that they were investigating his allegations of forgery and forged documents," and allegedly "delayed Lunt in good faith," *see id.* ¶ 111, Lunt does not even allege that Direct Mortgage delayed him in that way.  Indeed, the Loan was allegedly memorialized and the check written out to Lunt in August 2007.

      **C.**      **Lunt's Request for Rescission is Governed by a Three-Year Statute of Repose, Which Bars Lunt's Request, and Which Is Not Subject to Equitable Tolling.**

Lunt requests rescission pursuant to 15 U.S.C. § 1635(f).  That provision contains a three-year statute of repose. *See id.* As Lund first asserted his claims more than five years from the "date of consummation of the transaction," *see* 15 U.S.C. § 1635(f), that claim is barred by the

statute of repose.    And because it is a statute of repose, it is not subject to equitable tolling as a

matter of law.  *See Beach v Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998); *Lampf, Pleva, Lipkind,*

*Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) ("The 3–year limit is a period of

repose inconsistent with tolling . . . . Because the purpose of the 3–year limitation is clearly to

serve as a cutoff . . . tolling principles do not apply to that period.").

## II.   LUNT'S QUIET TITLE CLAIM IS DEPENDENT ON HIS TILA CLAIMS  AND LIKEWISE FAILS.

In order to prevail on a claim for quiet title, a plaintiff must "prevail on the strength of his

own claim to title and not on the weakness of a defendant's title or even its total lack of title."

*See Tadehara v. Ace Securities Corp. Home Equity Loan Trust Series 2007-HE4*, 492 Fed.Appx.

834, 837 (10th Cir. 2012) (quoting *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045,

1048–49 (Utah 1983)).  Moreover, that party "must allege title, entitlement to possession, and

that the estate or interest claimed by others is adverse or hostile to the alleged claims of title or

interest."  *See Wade v. Wachovia*, No. 2:10-cv-01045, 2011 U.S. Dist. LEXIS 28547, *3 (D.

Utah. Mar. 17, 2011) (unpublished disposition) (citing *State ex rel. Utah State Dept. of Social*

*Servs. v. Santiago*, 590 P.2d 335, 337–38 (Utah 1979); *see also Tadehara*, 492 Fed.Appx. at 838

(affirming a district court's dismissal of plaintiffs' quiet-title claim because, *inter alia*, the

plaintiffs "had not alleged that they held clear title to the property, had not alleged that they were

not in default on the note, and had admitted to conveying their interest in the property for the

purpose of securing the loan.").

The only "claim to title" Lunt alleges relates to his claim for rescission under TILA.  *See*

Am. Compl. ¶¶ 110–12.  There, Lunt states that, "[a]ccordingly, and in the alternative, [Lunt]

exercises his rights of rescission under [TILA]."  Because Lunt has only now asserted his rights

of rescission, this claim is barred under the three-year statute of repose.  *Id.* ¶ 112. And, as

discussed above, Lunt's remaining TILA Claims are likewise time-barred.  Given that bar, and

because Lunt has not alleged that he has clear title to the property or is otherwise entitled to

possess the property, his quiet title claim necessarily fails.

III.    **WITHOUT HIS OTHER CAUSES OF ACTION, LUNT'S REQUEST FOR INJUNCTIVE RELIEF FAILS.**

Because his TILA Claims and Quiet Title cause of action against Direct Mortgage are

barred or otherwise fail, Lunt's request for injunctive relief likewise fails.  *See* Am. Compl. pp.

21–22, ¶¶ 145–149.  Although Plaintiff captions his injunctive request as a cause of action,

"requests for declaratory or injunctive relief are actually remedies for other alleged causes of

action and do not qualify as causes of action on their own."  *See Hodge v. Ocwen Loan

Servicing*, No. 2:11-cv-00837-DN, 2012 U.S. Dist. LEXIS 58176 , *6 (D. Utah Apr. 25, 2012)

(unpublished disposition) (alteration omitted).  Further, to be entitled to injunctive relief, the

plaintiff must show, among other things, "a substantial likelihood of success on the merits."  *See

Cummings v. Bank of America, NA*, No. 2:11-cv-272 TS, 2011 U.S. Dist. LEXIS 30420, *1 (D.

Utah Mar. 22, 2011) (unpublished disposition).

In light of the failure of Lunt'sTILA and quiet title claims against Direct Mortgage, Lunt

cannot be successful on the merits of his claims.  Accordingly, Lunt's requested remedy for

injunctive relief should be denied and dismissed insofar as it can be characterized as a cause of

action.

## CONCLUSION

Lunt failed to assert his claims within TILA's one-year statute of limitations and its three-

year statute of repose.  On the face of Lunt's Amended Complaint, he has been aware for years

of his claims, but delayed asserting them.  He is not entitled to equitable tolling.  His TILA

Claims should therefore be dismissed with prejudice.  His quiet title claim is tied to his TILA

Claims and should also be dismissed with prejudice.  Finally, his request for injunctive relief is

not a cause of action, but in any event is tied to the success of the TILA Claims.  It, too, should

be dismissed with prejudice.

      DATED this 23rd day of October, 2013.

                  BENNETT TUELLER JOHNSON & DEERE


                  /s/ Daniel K. Brough
                  Daniel K. Brough
                  Eric B. Vogeler

                  *Attorneys for Defendant Direct Mortgage, Corp.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2013, I electronically filed the foregoing

**DEFENDANT DIRECT MORTGAGE, CORP.'S MOTION TO DISMISS AND**

**MEMORANDUM IN SUPPORT** with the Clerk of Court using the CM/ECF system, which

sent notification of such filing to the following:

Judson T. Pitts
WIMMER & PITTS, P.C.
1935 East Vine Street, Suite #140
Holladay, UT 84121

Anthony C. Kaye
Steven D. Burt
BALLARD SPAHR LLP
201 South Main Street, Suite 800
Salt Lake City, UT 84111-2221

James H. Woodall
K. Bradley Carr
LAW OFFICES OF JAMES H. WOODALL, PLLC
10808 River Front Parkway, Suite 175
South Jordan, UT 84095

/s/ Daniel K. Brough